WO

KM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angel Lopez Garcia, | No. CV 20-01924-PHX-JAT (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Centurion of Arizona, LLC, et al., | |
| Defendants. | |

Plaintiff Angel Lopez Garcia, who is confined in the Arizona State Prison Complex-Eyman, has filed, through counsel, a civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and paid the filing fee. On October 7, 2020, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction without Notice (Doc. 5). The Court will order Defendants to answer Counts One, Two, Three, Four, and Six of the Complaint; dismiss without prejudice Count Five; and deny the request for a temporary restraining order without notice, but require an expedited response to the request for preliminary injunction.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which

TERMPSREF

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

**II.    Complaint**

Plaintiff names the following Defendants in his six-count Complaint: Centurion of Arizona, LLC; Arizona State Prison Complex (ASPC)-Eyman Medical Director Dr. Rodney Stewart; Nurse Practitioner Pamela Olmstead; Facility Health Administrator Matilda Smith; Physical Therapist Angela L. Jennings; Simons Physical Therapy, P.C.; John and Jane Does 1-10; and Organizations A-F. Plaintiff seeks money damages and injunctive relief.

Plaintiff alleges that in 2007, his right hip was injured when he was struck by a truck. (Doc. 1 at 5.) Plaintiff experienced worsening impairment and physical limitations, and, after being incarcerated in the Arizona Department of Corrections (ADC), underwent an April 9, 2019 right hip labral repair, femoral osteoplasty, and capsular closure of his

1  right hip.  (*Id.*)  Plaintiff was subsequently housed in the Rincon medical unit at ASPC-
2  Tucson and sent to Simons Physical Therapy in Tucson, Arizona.  (*Id.* at 6*.*)  On May 15,
3  2019, Plaintiff was examined by Defendant Jennings, who provided Plaintiff with a
4  "Simons PT walker and witnessed [Plaintiff] fall when a wheel came off the walker."  (*Id.*)
5  Plaintiff alleges Defendant Jennings "admitted to [Plaintiff] she knew Simons PT had used
6  the wrong parts to repair the walker prior to his fall."  (*Id.*)

7  Plaintiff "experienced increased pain and increasing limitations of his right hip and
8  right leg and foot" after his fall and, "upon the requests [of] Jennings and his Tucson
9  medical providers, he underwent a new right hip MRI in July [] 2019, which revealed the
10 extensive labral tear."  (*Id.*)  Plaintiff's medical providers attempted to return Plaintiff to
11 the outside surgeon for further treatment, but the surgeon had left his practice.  Centurion
12 providers were unable to find a new surgeon before August 2019, when Plaintiff was
13 transferred ASPC-Eyman.  (*Id.*)

14 Plaintiff claims that "despite medical evidence that his ability to ambulate is
15 [severely] impaired and that he is at risk of falls, [Plaintiff] was transferred to a non-
16 medical, non-accessible prison facility unit during the COVID-19 pandemic."  (*Id.* at 7.)
17 By Spring 2020, Plaintiff had still not seen a surgeon.

18 Plaintiff alleges that from Spring 2019 to present, he has made numerous efforts to
19 obtain MRIs, consultations, and exams, but has "effectively been denied each of his
20 requests." (*Id.*)  In a July 21, 2020 grievance response, Defendant FHA Smith "advised
21 [that Plaintiff] has exhausted his remedies within the department," and after examining his
22 medical records, concluded Plaintiff

> is not wheelchair bound or ADA classified (because he can transfer from his wheelchair on his own, with no mention of whether he can ambulate at least 200 feet as set forth by the ADA and ADC Department Order 108); that he does not need a medical unit because he can attend to his activities of daily living mostly on his own (with no consideration of whether he should be in an ADA accessible facility); that he has been seen by prison medical staff several times (with no consideration of whether he received competent treatment); and that he has a

> "wheelchair, shower chair, walker, side restraints, handrails, and ramp in his living area, and an appointment with Neurosurgery is scheduled."

(*Id.* at 7-8.) Plaintiff claims Defendant Smith did not address the issues in his July 2020 grievance because she stated they were duplicative. (*Id.* at 8.)

In August 2020, Plaintiff was examined by a neurosurgeon, Dr. Iman Feiz-Erfan, who was only provided with a 2017 MRI report regarding Plaintiff's spine. Dr. Feiz-Erfan determined that the MRI did not reveal anything that "would result in the pain and limitations [Plaintiff] alleged, and also reported that [Plaintiff] did not have atrophy of his right leg, which he believed indicated it was functional." (*Id.*) However, Dr. Feiz-Erfan ordered "a thorough work-up with several MRI exams before [Plaintiff's] next exam." (*Id.*) Plaintiff asserts Defendants Stewart and Olmstead "failed to consider Dr. Feiz[-Erfan] was not aware of the numerous prior clinical observations of [Plaintiff's] leg and foot weakness, range of motion and sensation limitations," or "the radiological evidence of the severe labral tear of [Plaintiff's] right hip and multiple degenerative conditions of his spine and hip," and "disregarded the specialist's orders for several MRI exams and a follow-up appointment." (*Id.* at 8-9.)

On September 29, 2020, Defendants Steward and Olmstead, citing Dr. Feiz-Erfan's findings, "stripped [Plaintiff] of his wheelchair, most of his other assistance devices, and his nerve medication, muscle relaxer medication, depression medication and pain medication, cancelled the MRI exams that had already been approved, and advised he would not be returned to the neurosurgeon." (*Id.* at 9.)

On September 30, 2020, Plaintiff "caused his 2019 hip MRI exam reports and his physical therapy records to be faxed to Dr. Stewart" and asked Defendant Stewart to order a consultation with the neurosurgeon, an MRI, and the return of Plaintiff's wheelchair and other assistance devices. (*Id.*) Plaintiff also sent an emergency request to ADA Coordinators Romney and Davis, seeking reassessment of his Americans with Disabilities Act (ADA) status because his wheelchair had been taken from him and he was unable to ambulate 200 feet. (*Id.* at 10.) Even with assistance devices, Plaintiff alleges he has

difficulty moving through the Browning Unit and participating in visitation and phone calls due to narrow doorways, insufficient space in his cell to maneuver a wheelchair, and toilet fixtures that were too low for him to smoothly transfer from his wheelchair to the seat. (*Id.*)

Plaintiff claims Defendants Stewart, Olmstead, and Smith "knew of his worsening hip and leg impairments and ambulatory limitations, but failed to meet their written requirements under the ADA and Department Order 108 to reassess [Plaintiff's] ADA status and to have him transferred to an ADA accessible facility." (*Id.*)

In **Count One**, Plaintiff alleges Defendants Stewart, Olmstead, and Smith violated his Eighth Amendment rights when they failed to provide him with "competent medical care in deliberate indifference to his known serious medical needs and risk of serious harm." (*Id.* at 11-12.) Plaintiff contends Defendants Stewart, Olmstead, and Smith "knowingly chose not to allow [Plaintiff] to obtain the medical care he needed in a timely and adequate treatment, then wrongfully conspired to strip [Plaintiff] of his assistance devices, medications, and bar him from obtaining further MRI and specialist exams." (*Id.* at 12.)

In **Count Two**, Plaintiff alleges Defendant Centurion violated his Eighth Amendment rights because it implements

> policies, procedures, and practices [that] resulted in wide spread failures to provide appropriate standard of medical care to its patients, even for those with known serious medical needs and known risks of serious harm, such as [Plaintiff], by knowingly denying or delaying them from accessing competent medical care, as was proven through the investigations and reports of medical expert witnesses and ADOC monitors in the long-running class action lawsuit of . . . *Parsons v. Ryan* . . . .

(*Id.* at 15.) Plaintiff argues Centurion's practice of providing deficient care was the "actual and proximate cause[] of Plaintiff's inability to obtain competent and timely medical treatment for his back and hip impairments and chronic and severe pain." (*Id.*)

. . . .

. . . .

TERMPSREF

- 5 -

In **Count Three**, Plaintiff alleges Defendants Stewart and Olmstead committed medical malpractice by breaching their professional duty to provide Plaintiff with the community standard of medical care.  (*Id.* at 17.)

In **Count Four**, Plaintiff claims Defendant Centurion is vicariously liable for the medical malpractice of its employees.  (*Id.* at 20.)

In **Count Five**, Plaintiff claims Defendants Stewart, Olmstead, and Smith violated his rights under the ADA by engaging in "discriminatory behavior in violation of [Plaintiff's] rights to be placed/transferred in an ADA accessible facility, in deliberate indifference to his several health needs requests and an abundance of . . . evidence of [Plaintiff's] impairments, wheelchair dependence," and his difficulties navigating his housing facility.  (*Id.* at 22.)

In **Count Six**, Plaintiff claims Defendants Simons Physical Therapy and Jennings committed medical malpractice by failing to ensure the equipment they provided to Plaintiff was reasonably safe and in good working order and in providing Plaintiff a walker they "knew had been improperly repaired with the wrong parts."  (*Id.* at 24.)

### III.     Failure to State a Claim

#### A.     Count Five

In Count Five, Plaintiff claims Defendants Stewart, Olmstead, and Smith violated his rights under the ADA when they confiscated Plaintiff's wheelchair and assistance devices and failed to house Plaintiff in an ADA facility.

Under the plain language of Title II of the ADA, a public entity must deny Plaintiff the benefit of a service or program.  Therefore, Plaintiff may not maintain a right of action against individual prison officers or officials in their individual capacity.  *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("individual defendants cannot be held personally liable for violations of the ADA").  Accordingly, Plaintiff cannot maintain an ADA claim against Defendants Stewart, Olmstead, and Smith in their individual capacities.  Because Defendants Stewart, Olmstead, and Smith are not proper Defendants to Plaintiff's ADA claim, the Court will dismiss without prejudice Count Five.

### B. Fictitiously Named Defendants

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). Plaintiff makes no factual allegations against the fictitiously named Defendants. The Court will therefore dismiss without prejudice these Defendants.

## IV. Claims for Which an Answer Will be Required

Plaintiff has adequately stated claims in Counts One, Two, Three, Four and Six of the Complaint. The Court will require Defendants to answer these claims.

## V. Motion for Temporary Restraining Order and Preliminary Injunction

### A. Motion

Plaintiff seeks a temporary restraining order and preliminary injunction requiring Defendant Centurion to:

> (1) be enjoined from denying, obstructing, interfering, or delaying Plaintiff's access to his wheelchair, ramps, handrails and medications taken from him on or about September 29, 2020;
>
> (2) be enjoined from denying, obstructing, interfering, or delaying Plaintiff's access to his neurosurgeon, Dr. Iman Feiz-Erfan of Valleywise Health, and the radiological exams, surgery, rehabilitation and other diagnosis and treatment as deemed necessary by the neurosurgeon for his severe labral tear of right hip and degenerative conditions of his spine;
>
> (3) either immediately transfer Plaintiff to a medical unit or ADA[-]accessible unit, or within seven (7) days of the Court's Order, have a non-party medical provider assess Plaintiff's functional abilities (to stand, walk, etc.) with consideration of his radiological exams and clinical exams from June of 2019 to present, to determine if Plaintiff has a disability that requires him to be transferred to an ADA-accessible facility and provide the documentation to the Health Services Coordinator or designee to coordinate with the Offender Services Bureau Administrator to ensure Plaintiff's appropriate placement (or transfer).

(Doc. 5 at 3-4.)

Plaintiff argues he is likely to succeed on the merits; he is likely to suffer irreparable harm in the absence of an injunction due to his risk of falling without assistive devices and need for pain management medication; and the balance of equities tips in his favor.

### B. Temporary Restraining Order

A temporary restraining order can be issued without notice
> only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; **and** (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1) (emphasis added). *See also* LRCiv 65.1 ("*Ex parte* restraining orders shall only issue in accordance with Rule 65, Federal Rules of Civil Procedure.").

The Court has thoroughly reviewed Plaintiff's Motion and accompanying exhibits and finds Plaintiff has not shown that he will suffer irreparable injury before Defendants can be heard in opposition. *See* LRCiv 65.1. *See also Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984) (district court abused its discretion in granting ex parte temporary restraining order "when there was no valid reason for proceeding ex parte and by disregarding the strict procedural requirements of Fed. R. Civ. P. 65(b) for the issuance of such ex parte orders"); *Adobe Sys., Inc. v. S. Sun Prods., Inc.*, 187 F.R.D. 636, 643 (S.D. Cal. 1999). The Court will therefore deny Plaintiff's Motion for a Temporary Restraining Order.

### C. Preliminary Injunction

To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden of proof on each element of the test. *Envtl. Council of*

*Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).  The Court will require a response to Plaintiff's request for a preliminary injunction.

**IT IS ORDERED:**

(1) Defendants John Does 1-10, Jane Does 1-10, and Organizations A-F are dismissed without prejudice.

(2) Count Five of the Complaint is **dismissed** without prejudice.

(3) Defendants must answer Counts One, Two, Three, Four, and Six of the Complaint.

(4) Plaintiff's October 7, 2020 Motion (Doc. 5) is **denied in part** with respect to the request for a Temporary Restraining Order.  The Court **will not rule at this time** on Plaintiff's request for a preliminary injunction.

(5) Defendants **must respond** to the portion of Plaintiff's Motion (Doc. 5) seeking a preliminary injunction, within **10 days** from the date of service of the Motion.  Plaintiff file a reply within **5 days** of the filing date of the response.

(6) Plaintiff must either serve each Defendant or seek a waiver of service for each Defendant.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m).

(8) Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(9) Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(10) If properly completed, the Clerk of Court must issue the proposed Summonses filed at Docs. 3 and 4.

(11) This matter is assigned to the standard track and referred to Magistrate Judge Eileen S. Willett pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 8th day of October, 2020.

James A. Teilborg
Senior United States District Judge